## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN L. GREWE, JR., | Civil No. 04-3818 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| THE SOUTHWESTERN COMPANY, | |
| Defendant. | |

John D. Hagen, Jr., **HAGEN LAW OFFICE**, 607 Eighth Avenue Southeast, Minneapolis, MN 55414; James G. Vander Linden, **LeVANDER & VANDER LINDEN**, 200 South Sixth Street, Suite 1450, Minneapolis, MN 55402; Steven C. Pundt, **PUNDT LAW OFFICE**, 200 South Sixth Street, Suite 1450, Minneapolis, MN 55402; Allen R. Desmond, **DESMOND LAW OFFICE**, 200 South Sixth Street, Suite 1450, Minneapolis, MN 55402, for plaintiff.

John H. Guthmann, **HANSEN DORDELL BRADT ODLAUG & BRADT**, 3900 Northwoods Drive, Suite 250, St. Paul, MN 55112-6973, for defendant.

Plaintiff Brian L. Grewe, Jr. ("Grewe") was involved in a motor vehicle accident in Picayune, Mississippi on August 20, 2002. Grewe was a passenger in a vehicle when the driver, Samantha Loeffler ("Loeffler"), fell asleep at the wheel causing the vehicle to drive off of the road and strike a tree. Both Grewe and Loeffler were independent contractors of defendant, The Southwestern Company ("Southwestern"). Grewe brought this tort action against Southwestern alleging claims of negligence and vicarious liability and seeking damages for his injuries.

Southwestern moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. Southwestern alleges that Grewe's claims are barred by the applicable Tennessee statute of limitations, that Grewe fails to make out a prima facie case of negligence, and that Grewe does not allege a viable vicarious liability claim.[1] For the reasons stated below, the Court denies Southwestern's motion in its entirety.

## BACKGROUND

Southwestern is a book publisher/wholesaler headquartered in Nashville, Tennessee. Southwestern contracts with college students to sell its books door to door to residential customers during the summer. While a freshman at the University of Wisconsin–LaCrosse, Grewe entered into an agreement with Southwestern to be an "independent contractor" of Southwestern.[2] Southwestern organized carpools to transport the students from their homes to Nashville for their initial training, from Nashville to their assigned sales areas, and, at the end of the summer, back to Nashville for "checkout" and then back to their homes.

During the summer of 2002, Grewe sold books in the Houston, Texas area. Grewe alleges that although the students were classified as independent contractors, Southwestern exerted a significant amount of control over their behavior including

---

[1] Southwestern also originally asserted that Minnesota courts did not have personal jurisdiction over Southwestern, but subsequently withdrew that motion.

[2] The agreement stated that Grewe was an "independent Contractor under this Dealer Agreement and cannot be treated as an employee or agent of Company for Federal tax purposes, or for any other purpose whatsoever." (Dealer Agreement, Compl., Ex. A.)

directing them to work 80 hours a week, knocking on the first door at 7:59 a.m. each day, and calling their sales manager each night after 9:30 p.m. At the end of Grewe's summer, a Southwestern employee arranged for Grewe and three other students working in the Houston area to carpool back to Nashville for the required "checkout" meeting. The students were to rendezvous in Lafayette, Louisiana in the afternoon of August 19. The Southwestern employee encouraged the students to arrive at the checkout meeting in Nashville at 8:00 a.m. on August 20.

According to Grewe, the students attempted to drive through the night from Lafayette to Nashville, alternating between two vehicles and taking turns driving. While driving to Nashville, at about 4:37 a.m. on August 20, 2002, Grewe was sleeping in the backseat of a vehicle driven by Loeffler, another student contractor working for Southwestern. Loeffler apparently fell asleep at the wheel, causing the vehicle to leave the road and strike a tree. Grewe suffered injuries that paralyzed him from the waist down. Grewe alleges claims for negligence and vicarious liability against Southwestern.

## ANALYSIS

### I. STANDARD OF REVIEW

In a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff and presumes all facts alleged in the complaint to be true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). The Court may dismiss a claim only where the plaintiff cannot

prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Casazza v. Kiser*, 313 F.3d 414, 418 (8th Cir. 2002).

## II.   STATUTE OF LIMITATIONS

Southwestern argues that Tennessee's one-year statute of limitations applies in this case and, therefore, Grewe's claims are time barred. Grewe argues that Minnesota's six-year statute of limitations should be applied, which would allow Grewe's claims to proceed. To determine which statute of limitations should be applied, the Court must apply a choice of law analysis: first, the Court must determine whether a conflict exists between the state laws; second, the Court must determine if both states have sufficient contacts with the lawsuit to comport with due process; and third, the Court must apply the forum state's choice of law analysis. *Schiele v. Charles Vogel Mfg. Co.*, 787 F. Supp. 1541, 1550 (D. Minn. 1992). It is undisputed that a conflict exists between the laws of the two states and that each state has sufficient contacts. The Court, therefore, need only focus on Minnesota's choice of law analysis.

A preliminary step to the Minnesota choice of law analysis is to determine if the law at issue is procedural or substantive. *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 5 (Minn. Ct. App. 2003). If the law is found to be procedural, then Minnesota follows "the almost universal rule that matters of procedure [are] governed by the law of the forum state." *Davis v. Furlong*, 328 N.W.2d 150, 153 (Minn. 1983). If the law is substantive, Minnesota applies a multi-factor balancing test. *Danielson*, 670 N.W.2d at 5. Grewe argues that under Minnesota law, statutes of limitations are procedural and therefore the law of the forum state should apply. Southwestern argues that, although Minnesota has

historically held that statutes of limitations are procedural, there is a recent trend adopted by the Court of Appeals, which holds that statutes of limitations are substantive.

Traditionally, the Minnesota Supreme Court has held that statutes of limitations are procedural. *See In re Daniel's Estate*, 294 N.W. 465, 469 (Minn. 1940), *Am. Mut. Liab. Ins. Co. v. Reed Cleaners*, 122 N.W.2d 178, 180 n.1 (Minn. 1963). In 1974, however, the Minnesota Supreme Court applied a multi-factor choice of law analysis in determining whether a Louisiana direct action statute and a Louisiana statute of limitations applied. *Myers v. Gov't Employees Ins. Co.*, 225 N.W.2d 238 (Minn. 1974). *Myers*, however, did not cite, nor overrule, the traditional rule that statutes of limitations are procedural. Then, in 1998, the Minnesota Supreme Court again characterized statutes of limitation as procedural. *Kennecott Holdings Corp. v. Liberty Mut. Ins. Co*, 578 N.W.2d 358, 361 n.7 (Minn. 1998).

Southwestern urges the Court to follow the more modern trend and treat the statute of limitations as substantive. *See* Restatement (Second) of Conflict of Laws § 142 (1988). This trend was also recognized by the Minnesota Court of Appeals in *Danielson*. 670 N.W.2d at 9 (stating that "[b]ecause our supreme court generally favors use of the choice-influencing consideration analysis and because of the shift to this choice of law approach, we follow § 142 of the Restatement, which applies the choice-influencing consideration analysis to statute of limitations conflicts").

The Court declines Southwestern's invitation. The Minnesota Supreme Court has spoken several times on this issue and has clearly found statutes of limitations to be procedural. While it is true that in the *Myers* case the supreme court applied the multi-

factor analysis, the supreme court did not appear to be overruling its prior rule. This is confirmed by *Kennecott*, which subsequently applied the traditional procedural rule. Although the Minnesota Court of Appeals has implied that the Minnesota Supreme Court would no longer apply the traditional rule if faced with the question today, that is not for this Court to decide. This Court, sitting in diversity, is "obligated to apply state law as declared by statute or by opinion of the state's highest court." *Wilson v. Colonial Penn Life Ins. Co.*, 454 F. Supp. 1208, 1211 n.4 (D. Minn. 1978). Furthermore, although decisions of the Minnesota Court of Appeals are persuasive authority, this Court must follow them only "when they are the best evidence of Minnesota law." *Bureau of Engraving, Inc. v. Fed. Ins. Co.*, 5 F.3d 1175, 1176 (8th Cir. 1993) (internal quotations omitted). On this issue, the Court finds that the best evidence of what the Minnesota Supreme Court would hold if faced with this question is what the Minnesota Supreme Court has held in the past. Therefore, the Court finds that the statute of limitations is procedural and will apply Minnesota's six-year statute of limitations. *See also Glover v. Merck*, 2004 WL 2677126 (D. Minn. Oct. 8, 2004) (finding statute of limitations to be procedural). *But see Fee v. Great Beard Lodge*, 2004 WL 898916 (D. Minn. Apr. 9, 2004) (finding statute of limitations to be substantive).

### III.   NEGLIGENCE

To make out a prima facie case of negligence, Grewe must show that Southwestern had a duty, that Southwestern breached that duty, that Southwestern's breach was the proximate cause of Grewe's injuries, and that Grewe did in fact suffer an injury. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn. 1982). Southwestern

argues that Grewe fails to show that Southwestern had a duty to protect Grewe from Loeffler's negligent driving and fails to show a casual connection between whatever role Southwestern played in arranging the carpool and the accident.

### A.     Duty

Southwestern asserts that Grewe's negligence claim is premised on Southwestern having a duty to prevent Loeffler from driving negligently and argues that parties generally do not owe a duty to prevent the negligence of another unless a special relationship exists; such as a common carrier, innkeeper, or parent-child relationship. *See Donaldson v. Young Women's Christian Ass'n*, 539 N.W.2d 789, 792 (Minn. 1995). Grewe's negligence claim, however, is not focused on whether Southwestern had a specific duty to prevent Loeffler from driving while tired, instead, Grewe asserts that Southwestern was negligent when it created a situation in which students, exhausted from a long summer of work, would be driving through the night.  Grewe alleges that Southwestern's duty arose out of the fact that Southwestern knew, or should have known, that instructing students to arrive at a checkout meeting at 8:00 a.m. and then arranging carpools for exhausted students that would require them to drive through the night in order to arrive by early in the morning would result in a foreseeable risk of injury to the students. *Jam v. Indep. Sch. Dist. No. 709*, 413 N.W.2d 165, 169 (Minn. Ct. App. 1987) (stating that whether an actor owed a duty to a plaintiff for negligence purposes "depends on whether the actor could reasonably have anticipated injury to that person as a result of his conduct") (citing Restatement (Second) of Torts § 281(b) cmt. c., illus. 2 (1988)); *see also Vogt v. Johnson*, 153 N.W.2d 247, 251 (Minn. 1967) (stating that "the common-law

test of duty is the probability or foreseeability of injury to the plaintiff), *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 100 (N.Y. Ct. App. 1928) ("The risk reasonably to be perceived defines the duty to be obeyed.").

The Court finds this case analogous to *Posner v. Paul's Trucking Service, Inc.*, 380 F.2d 757 (1st Cir. 1967). In the *Posner* case, after completing a 400-mile journey the day before, a truck driver, who was an independent contractor, was given an assignment to drive 1050 miles from Chicago to Massachusetts by the next day. The truck driver fell asleep at the wheel and collided with an automobile. The injured party from the automobile brought a negligence claim against the employer who had contracted with the truck driver. The First Circuit held that "an employer of an independent contractor may be liable for physical harm caused by the contractor carrying out orders or directions negligently given by the employer." *Id.* at 760.

Similar to the *Posner* case, the Court finds that Grewe has alleged sufficient facts that a reasonable jury could find that Southwestern negligently instructed the students to drive to Nashville in a manner (via carpool) and at a time (by 8:00 a.m.) that created an unreasonable risk of physical harm to others, including Grewe. *See id.*

### B. Causation

Southwestern argues that Grewe fails to show that there is a causal link between encouraging Grewe to be at the morning meeting and the accident. Specifically, Southwestern asserts that Grewe only shows that Southwestern was a "but for" cause of the accident by setting a chain of events in motion, but not the proximate cause of the accident as required to make a claim for negligence. *See, e.g.*, *Childs v. Standard Oil Co.*,

182 N.W. 1000, 1001-02 (Minn. 1921) (stating that if defendant's act injured the plaintiff only "through some distinct wrongful act or neglect of another, the last wrong is the proximate cause").

Grewe alleges that Southwestern did not merely set the stage for Grewe's injuries, but actually controlled the situation, by setting up the carpools, and controlled the actors, by telling the students to be in Nashville by 8:00 a.m. Again, the Court finds this similar to the *Posner* case in which an employer directed an independent contractor to deliver frozen eggs to a certain place, in certain way, by a certain time. 380 F.2d 757. Therefore, the Court finds that a reasonable jury could find that Southwestern was the proximate cause of Grewe's injuries. As such, the Court denies Southwestern's motion to dismiss Grewe's negligence claim.

## IV.   VICARIOUS LIABILITY

Grewe alleges that Southwestern should be held vicariously liable for the injuries caused by Loeffler's negligent driving. Section 416 of the Restatement (Second) of Torts provides that "[o]ne who employs an independent contractor to do work which the employer should recognize as likely to create . . . a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability."

Citing to the *Conover* case, Southwestern argues that the Minnesota Supreme Court has held that this section is intended to protect third parties, not parties who are engaged in the work at issue. *Conover v. Northern States Power Co.*, 313 N.W.2d 397 (Minn. 1981). The issue in the *Conover* case, however, was "whether the employer of an independent contractor is vicariously liable . . . for the negligence of the contractor which

causes injury to the contractor's employee." *Id.* at 403.  Grewe is not Loeffler's employee.  As such, the Court finds the *Conover* case inapplicable to the situation at hand.

Southwestern also argues that it cannot be held vicariously liable because driving a car does not involve a "peculiar risk" as required under the Restatement.  Comment d of the Restatement defines a peculiar risk as "a risk differing from the common risks to which persons in general are commonly subjected." Restatement (Second) of Torts § 416 cmt. d (1988).  As an example, the comment goes on to state that an employer would not be liable for a contractor's failure to inspect the brakes on his truck, but would be liable for a contractor's failure to take special precautions to anchor a load of giant logs to his truck.

At this point in the case, taking all facts alleged in the complaint as true and making all inferences in favor of Grewe, the Court finds that Grewe has alleged sufficient facts to support a vicarious liability claim.  The Restatement does not state that driving is always an ordinary activity.  Instead, the Restatement acknowledges that sometimes driving does create a peculiar risk.  Based on the record before it, the Court finds that directing a group of exhausted students to drive all night could be found to create a peculiar risk of physical harm and that Southwestern, therefore, could be found liable for failing to take special precautions.

## ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that the Defendant's Motion to Dismiss [Docket No. 9] is **DENIED**.

DATED: July 5, 2005  　　　　　　　　　　　　s/ John R. Tunheim _
at Minneapolis, Minnesota.  　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　United States District Judge